**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Aug 02 2013, 6:19 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
Indiana Department of Child Services
Indianapolis, Indiana

**PATRICK M. RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF M.R.: )
)
)
C.B., )
)
    Appellant-Respondent, )
)
        vs. )      No. 49A05-1212-JT-643
)
INDIANA DEPARTMENT OF CHILD SERVICES, )
)
    Appellee-Petitioner. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Larry Bradley, Magistrate
Cause No. 49D09-1208-JT-30752

**August 2, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

C.B. ("Mother") appeals the trial court's termination of her parental rights over her minor child M.R. ("the child") on the petition of the Indiana Department of Child Services ("DCS"). Mother raises one issue for our review, namely, whether the trial court's conclusion that termination of her parental rights over the child is in the child's best interests is clearly erroneous.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

In August of 2009, the child was born and tested positive for opiates. Mother admitted to the DCS that she had a history of substance abuse, and, on the DCS's petition, the court adjudicated the child a CHINS. The court ordered Mother to comply with various services pursuant to a dispositional order, but Mother continued to test positive for drugs despite the court-ordered services. In February of 2011, Mother was reunited with the child.

On August 12, 2011, Mother was arrested for shoplifting. On November 22, the court again adjudicated the child a CHINS based on its prior adjudication, Mother's criminal history, lack of housing for the child, Mother's incarceration, and Mother's inability and unwillingness to provide the child with basic care and necessities. The court then removed the child from Mother's care and ordered Mother to participate in home-based management and random drug screens; to notify the Family Case Manager ("FCM") of any arrests or criminal charges; to obtain substance abuse counseling,

appropriate housing, and a legal source of income; and to participate in visitation with the child.

On January 26, 2012, Mother was arrested for conspiracy to commit dealing in cocaine, to which she later pleaded guilty. Thereafter, the court approved a plan of adoption for the child based on Mother's failure to comply with several conditions of the court's prior dispositional order. On August 3, the DCS filed its petition for the involuntary termination of Mother's parental rights.

The court held an evidentiary hearing on the DCS's petition on October 25. Due to her incarceration, Mother appeared by telephone. The FCM testified that Mother did not complete any court-ordered services and only visited her son once, even though many visits were scheduled. The FCM further testified that termination of Mother's parental rights was in the child's best interests because, upon her release from the Department of Correction, Mother did not know "where she [would] reside, how she [would] provide for [the child,] and if she [could] remain sober without being incarcerated." Transcript at 79. The court-appointed guardian ad litem ("GAL") likewise testified that termination of Mother's parental rights was in the child's best interests. In her testimony, Mother acknowledged that she had failed to visit the child because she "was using again and . . . didn't think it was right . . . to go around [the child while] using." Id. at 40. Mother also testified that her projected date of release from the Department of Correction was May of 2014.

On October 29, the court entered its order terminating Mother's parental rights. This appeal ensued.

3

**DISCUSSION AND DECISION**

We begin our review by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." Bailey v. Tippecanoe Div. of Family & Children (In re M.B.), 666 N.E.2d 73, 76 (Ind. Ct. Ap. 1996), trans. denied. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. Schultz v. Porter Cnty. Office of Family & Children (In re K.S.), 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. Id. Although the right to raise one's child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. Id. at 836.

Before an involuntary termination of parental rights can occur in Indiana, the DCS is required to allege and prove, among other things, that termination is in the best interests of the child. Ind. Code § 31-35-2-4(b)(2)(C). The DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.), 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. Peterson v. Marion Cnty. Office of Family & Children, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), trans. denied. Instead, we consider

4

only the evidence and reasonable inferences that are most favorable to the judgment.  Id.  Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous.  Judy S. v. Noble Cnty. Office of Family & Children (In re L.S.), 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

In terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon.  When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review.  Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005).  First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment.  Id.  "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference."  Id.  If the evidence and inferences support the trial court's decision, we must affirm.  In re L.S., 717 N.E.2d at 208.

Here, Mother asserts that the DCS failed to show that termination of the parent-child relationship is in the child's best interests.  In determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by the DCS and to consider the totality of the evidence.  Stewart v. Ind. Dep't of Child Servs. (In re J.S.), 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).  We have previously held that the recommendations of the FCM and a court-appointed advocate to terminate parental rights, in addition to evidence that the continuation of the parent-child relationship poses

5

a threat to the child,[1] may be sufficient to show by clear and convincing evidence that termination is in the child's best interests. M.M. v. Elkhart Office of Family & Children (In re M.M.), 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

Here, both the FCM and the child's GAL testified that they believed termination of the parent-child relationship to be in the child's best interests. Specifically, the FCM testified that, upon her release from the Department of Correction in May of 2014, Mother did not know "where she [would] reside, how she [would] provide for [the child,] and if she [could] remain sober without being incarcerated." Transcript at 79. The GAL also recommended termination of Mother's parental rights, stating:

> [The child has] had lots of instability, [and] continued instability can lead to issues with children's behavior . . . behavioral issues, mental health issues . . . and so I think at this point he needs permanency. He needs the stability. He needs to be in a loving, forever home . . . that's going to be able to provide for . . . his basic needs.

Id. at 89.

Mother has not demonstrated that the court's conclusion that termination of her parental rights over the child is clearly erroneous. In addition to the testimony of the FCM and the GAL, at the time of the termination hearing the child had spent a total of eight of his thirty-eight months of life in Mother's care. When Mother was not incarcerated she attended only one visit with the child and cancelled all other scheduled visits because she was abusing drugs. Mother's pattern of substance abuse and incarcerations, her inability to find or keep steady employment and income, her inability

---

[1] Mother does not appeal the court's conclusion that continuation of the parent-child relationship here poses a threat to the child.

6

to cooperate with and benefit from services offered to her, her lack of permanent housing, and her general instability demonstrates her inability to provide for the child. See Bester, 839 N.E.2d at 152 (holding that "a parent's habitual pattern of conduct" is a relevant consideration in determining whether that parent's rights should be terminated). Moreover, the child has bonded with his foster parent, the placement meets all his needs, and the foster parent intends to adopt the child. Mother's arguments on appeal are merely requests for this court to reweigh the evidence, which we will not do.[2] We hold that the court's conclusion that termination of Mother's parental rights is in the child's best interests is not clearly erroneous, and we affirm the court's judgment.

Affirmed.

BAILEY, J., and BARNES, J., concur.

---

[2] Insofar as Mother argues that her case is similar to In re G.Y., we cannot agree. In In re G.Y., G.Y.'s mother had not committed any offenses during G.Y.'s lifetime, she had not used drugs, she cooperated and completed dispositional orders, and she demonstrated a commitment and interest in maintaining a parental relationship with G.Y. See 904 N.E.2d at 1264-65. Here, Mother's relationship to the child is in stark contrast to the facts presented in In re G.Y.